IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JIM DESMOND                                                                          Case No. 09-34-GLL

          Plaintiff,
vs.

PHILLIPS & COHEN ASSOCIATES, L.T.D.

MOTION TO OPEN DISCOVERY

      1.      Plaintiff is asking this Court to open discovery because (a) Defendant didn't identify or provide its written policy regarding the handling of cease and desist letters (b) didn't identify the employees who worked in the mailroom or their manager and (c) didn't identify the internal auditor, Cindy Thompson, who audits Defendant's processes and procedures, including the process by which cease and desist letters are handled.

      2.      Plaintiff sent two (2) letters to Defendant telling Defendant to stop communicating with him regarding a debt belonging to his deceased wife. Defendant continued to communicate with Plaintiff. Defendant is claiming bona fide error.

      3.      These letters are commonly referred to in the debt collection industry as cease and desist letters. Defendant's policy regarding how it processes cease and desist letters is obviously an issue in this case.

      4.      Plaintiff sent the letters by certified mail. The signed green cards are attached to the complaint as exhibits.

      5.      It turns out the individuals who signed the green cards worked in Defendant's mailroom. One of the individuals, Nina Brown, no longer works for the

Defendant. This was all disclosed to Plaintiff for the first time during Defendant's 30(b)(6) deposition, which took place on October 27, 2009. Plaintiff received the transcript on November 18, 2009.

6. Defendant never identified the individuals who signed the green cards despite Plaintiff's Interrogatory asking Defendant to identify all persons who have personal knowledge of any facts or issues involved in this lawsuit. (See Interrogatory No. 3 attached hereto as Exhibit "A").

7. In addition to signing for the letters, these individuals have personal knowledge regarding facts or issues involved in this lawsuit in light of the fact that Defendant's mailroom clerks are the ones responsible for processing cease and desist letters.

8. Plaintiff first learned of Defendant's policy regarding the handling of cease and desist letters during Defendant's 30(b)(6) deposition. This policy should have been identified and provided in Defendant's discovery responses. (See Interrogatory nos. 4 and 5 and Request for Production No. 2 attached hereto as Exhibit "B").

9. Defendant's Corporate Representative, Robert Obringer, testified that the procedure regarding how a cease and desist is handled is in writing. (Obringer Depo. pg. 30). It is found in a standard operating procedure and in the compliance policy manual. (Obringer Depo. pp. 30-31). The standard operating policy describes the policy in which cease and desist letters are handled upon their receipt. (Obrigner Depo. pp. 31-32). A copy of the standard operating policy is also in the compliance manual. (Obringer Depo. pg. 32). (See transcript pages attached hereto as Exhibit "C").

10. All mail comes into Defendant's Delaware office. The mailroom clerks who sort the mail process it. Items identified by the clerks as cease and desist letters would be segregated that day and presented to the compliance department. There is an associate in the compliance department who would code the file as a cease and desist and remove the active address and phone numbers in the account. . This process has been in place for at least a year. Prior to this, the mailroom clerks annotated the file. (Obringer Depo. pp. 18-19). (See transcript pages attached hereto as Exhibit "D").

11. Defendant handles thousands of accounts. (Obringer depo. pg. 21) It received hundreds of pieces of mail on any given day. (Obringer depo pg. 21) Defendant employees three (3) mailroom clerks to process all of this mail. Defendant increased the number of mailroom clerks from two (2) to three (3) a year and a half ago. (Obringer depo pg. 22). The mailroom clerks are responsible for sorting all of this mail to make sure that if a cease and desist letter is received, it gets sent to the compliance department. (Obringer depo pg. 22). The compliance department relies on these three (3) mail clerks to make sure they properly identify cease and desist letters and then process them into the correct department. (Obringer depo. pg. 26). The mail clerks went through general FDCPA training and were trained by their manager in identifying cease and desist letters. (Obringer depo. pg. 26-27). (See transcript pages attached hereto as Exhibit "E").

12. Defendant never identified the mail clerks' manager despite Plaintiff's Interrogatory asking Defendant to identify all persons who have personal knowledge of any facts or issues involved in this lawsuit. (See Exhibit "A").

13. Cindy Thompson, defendant's internal auditor, audits Defendant's processes and procedures, including the handling of cease and desist letters. (Obringer depo. pg. 23). (See transcript page attached hereto as Exhibit "F").

14. Defendant never identified Ms. Thompson despite Plaintiff's Interrogatory asking Defendant to identify all persons who have personal knowledge of any facts or issues involved in this lawsuit. (See Exhibit "A").

15. Defendant never identified or provided its policy regarding the handling of cease and desist letters despite Plaintiff's discovery requests.

16. In addition, Obringer identified other documents in his deposition that are responsive to Plaintiff's discovery requests and were not produced.

17. On November 3, 2009, Plaintiff followed up and requested the documents. Plaintiff followed up again on November 5, 2009. Defense Counsel responded on November 5, 2009 that she forwarded Plaintiff's request and was waiting for a response. Plaintiff followed up on November 11, 2009. Defense Counsel responded on November 11, 2009 that her client was getting the documents together. To date, Plaintiff does not have the documents. (See e-mails attached hereto as Exhibit G).

18. Based on what was disclosed in Obringer's deposition, Plaintiff needs: (a) Nina Brown's last know address and phone number unless Defendant agrees to voluntarily produce her; (b) the written policy regarding the processing of cease and desist letters; (c) the documents identified in Obringer's deposition and promised in Defense Counsel's e-mail.

19. After receiving the documents, Plaintiff needs to: (a) depose the mailroom clerks who were employed by Defendant during the time the subject account was open;

(b) re-depose Defendant's 30(b)(6) in light of the fact Plaintiff did not have all of the documents responsive to Plaintiff's discovery requests at the time of the deposition; (c) depose the mail clerks' manager and the internal auditor.

20. Plaintiff is respectfully requesting forty (40) days to complete this discovery.

Respectfully Submitted,

JEFFREY L. SUHER, P.C.

/s/Jeffrey L. Suher,
Jeffrey L. Suher, Esquire
Pa. I.D. #74924
4328 Old Wm Penn Hwy, Ste 2J
Monroeville, PA 15146
412-374-9005
412-374-0799 (fax)
lawfirm@jeffcanhelp.com

JURY TRIAL DEMANDED