IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JIM DESMOND,                          )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )   Civil Action No. 09-0034
                                      )
PHILLIPS & COHEN ASSOCIATES, LTD.,    )
                                      )
        Defendant.                    )

MEMORANDUM

Gary L. Lancaster
Chief Judge.                                        July 8, 2010

This is an action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., stemming from phone calls that defendant made to plaintiff regarding plaintiff's deceased wife's debt. Plaintiff alleges that defendant violated section 1692c(c) of the FDCPA for its collection efforts following its receipt of a cease and desist letter from plaintiff (count I). Plaintiff also asserts claims for invasion of privacy (count II), negligence (count IV), and negligence per se (count III) under Pennsylvania state law. Plaintiff seeks, inter alia, statutory damages under the FDCPA as well as punitive damages for its state law claims.[1]

Pending before the court are two motions: defendant's motion to dismiss in the form of partial motion for summary

---

[1] Punitive damages are not available under the FDCPA. See Whiteman v. Burton Neil & Assocs. P.C., No. 07-2289, 2008 WL 4372842, at *3 (M.D. Pa. Sept. 19, 2008) ("The damages section of the FDCPA does not provide for punitive damages.") (citing 15 U.S.C. § 1692k).

judgment and defendant's motion for partial summary judgment as to counts II, III, and IV of the complaint as well as to plaintiff's request for punitive damages [Doc. Nos. 70 & 86]. This memorandum will address both motions. For the reasons set forth below, defendant's motions will be denied.

I. FACTUAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed. We construe all other facts in the light most favorable to plaintiff, the non-moving party, for purposes of deciding the pending motions only. We will discuss additional facts throughout the memorandum, where applicable.

Plaintiff's deceased wife, Mrs. Jill Desmond, incurred $11,154.67 in debt on a credit card issued by Chase bank ("Chase"). Defendant Phillips & Cohen Associates, Ltd. ("P&C") is the debt collection agency for Chase.

Mrs. Desmond passed away in November 2007. According to plaintiff, Mr. Desmond, P&C began calling his residence in January 2008 regarding collection of the debt on Mrs. Desmond's Chase credit card. The parties dispute the total number of calls P&C made to the Desmond residence; however, according to P&C's phone records and account notes, P&C made a total of fourteen calls to the Desmond residence, eight of which took place between February 20, 2008 and February 29, 2008 and six of which took place between March 3, 2008 and May 19, 2008.

P&C also sent four letters to the Desmond residence, the first of which was dated February 21, 2008 and addressed to "the Estate of Jill C. Desmond." In this letter, P&C acknowledged Mrs. Desmond's death, indicated the amount of the outstanding debt, and inquired as to whether an estate existed on behalf of Mrs. Desmond. In response, Mr. Desmond sent a cease and desist letter[2] dated February 26, 2008 to P&C. That letter stated:

> Sirs,
> Do not contact me any further. I am not responsible for this debt.
> Jim Desmond

After Mr. Desmond sent this letter, P&C continued to call him. Although Mr. Desmond has testified that he cannot remember how often he received calls from P&C, he contends that the calls were "pretty consistent," that P&C would leave messages sometimes, and when it did not, he would see P&C's number on his caller ID.

Ms. Amber Lohr ("Ms. Lohr"), an account specialist with P&C, called the Desmond residence regarding Mrs. Desmond's debt. Ms. Lohr testified that after she had left one or two messages on the answering machine, she noticed that the outgoing message on the answering machine indicated that messages pertaining to Mrs. Desmond would not be returned, but that such messages should be written down and mailed to the residence.

---

[2] P&C contends that although Mr. Desmond has produced a certified mail receipt for this letter, it has no record of its receipt. For purposes of deciding the pending motions only, we will assume P&C received this letter.

3

Ms. Lohr testified that she understood the outgoing message to mean that although Mr. Desmond did not want to receive messages on his answering machine regarding his deceased wife, he would still receive phone calls regarding the matter. For this reason, Ms. Lohr testified that she continued to call the Desmond residence, and as a courtesy to Mr. Desmond, she did not leave any further messages on the answering machine. According to P&C's phone records and account notes, P&C called Mr. Desmond six times between March 3, 2008 and May 19, 2008.

Ms. Lohr actually spoke with Mr. Desmond only once, early in March of 2008. After she greeted him and identified herself as an employee of P&C, Mr. Desmond told her that his wife had passed away just a few months prior and that P&C was like a "bunch of vultures." Ms. Lohr responded that P&C's policy is to give three months to grieve. Mr. Desmond testified that he was so angry by this response, that he "wanted to reach through the phone and choke her."

At that time, Ms. Lohr informed Mr. Desmond she had "some questions," and Mr. Desmond responded by telling her to write them down and send them to him so that he could have his attorney look at them. Ms. Lohr then said that she had "just simple little questions" such as whether Mrs. Desmond had a will and if there was an estate on her behalf. Mr. Desmond answered these two questions in the negative and told Ms. Lohr that he wanted "this crap to

stop" and that he "was told by Chase [he] don't owe the money." Ms. Lohr agreed that he did not owe the money, and explained that she "just always ask[s] to see if it's something that ... [the family] would want to resolve on behalf of their loved one. Some people do. Some people don't." Before the phone conversation ended, Ms. Lohr told Mr. Desmond that P&C would not bother him anymore. Mr. Desmond testified that during the telephone conversation, Ms. Lohr never raised her voice at him and was polite, and that other than this telephone conversation, Mr. Desmond never spoke with anyone from P&C.

Despite the fact that Ms. Lohr told Mr. Desmond that P&C would not bother him anymore, on May 13, 2008, Mr. Desmond received a second letter from P&C addressed to "the Estate of Jill C. Desmond" regarding a settlement offer for the Chase debt. On May 27, 2008, Mr. Desmond sent the following letter[3] to P&C:

Sirs,

This is my third notice to you that I am not responsible for the debt of Jill C. Desmond. I have sent you a written notice on Feb 27 2009, and was told by phone that you would not bother me any more [sic]. This is my last notice.

Jim Desmond

---

[3] As with Mr. Desmond's February 26th letter, P&C contends it never received this letter, despite the fact that Mr. Desmond has produced a certified mail receipt. Viewing the evidence in the light most favorable to the non-moving party, Mr. Desmond, for purposes of deciding the pending motions, we will assume that P&C received this letter.

5

Mr. Desmond testified that he does not recall receiving any further telephone calls from P&C after he received P&C's May 13, 2008 letter. He did receive, however, two more letters from P&C, one dated June 16, 2008 and one dated July 3, 2008, both of which were addressed to "the Estate of Jill C. Desmond" and offered to settle the outstanding debt on his deceased wife's Chase credit card.

II. PROCEDURAL HISTORY

Mr. Desmond brought this action on January 13, 2009, alleging that P&C violated section 1692c(c) of the FDCPA. In this complaint, Mr. Desmond's allegations related solely to P&C's letters [See Doc. No. 1]. There were no allegations regarding phone calls, answering machine messages, or missed phone calls from P&C to Mr. Desmond. Mr. Desmond testified that he reviewed this complaint before his attorney filed it [Id.].

After Mr. Desmond received P&C's account notes documenting its calls to the Desmond residence in discovery, Mr. Desmond testified that he recalled telephone calls from P&C [See Doc. No. 88-1]. Then on January 21, 2010, after the close of discovery, plaintiff's counsel filed an amended complaint, adding allegations regarding the telephone calls, as well as state law claims for invasion of privacy, negligence, and negligence per se, and a request for punitive damages [See Doc. No. 59].

On February 12, 2010, P&C filed a motion to dismiss in the form of a motion for partial summary judgment [Doc. No. 70]. After the court resolved various discovery motions, defendant filed a motion for partial summary judgment on April 12, 2010 [Doc. No. 86]. Both of these motions [Doc. Nos. 70 & 86] are ripe for disposition and will be addressed as summary judgment motions because discovery has now closed.

III. STANDARD OF REVIEW

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to

weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

The United States Supreme Court has "emphasized, [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotations omitted) (quoting Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). All inferences must be drawn and all doubts resolved in favor of the non-moving party. Weldon v. Kraft, Inc., 896 F.2d 793, 797 (3d Cir. 1990).

In summary, the inquiry on a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is so one-sided that the movant must prevail as a matter of law.

It is on this standard that the court has reviewed P&C's partial motions for summary judgment. For the reasons that follow, the court will deny the motions.

IV. DISCUSSION

P&C contends that summary judgment should be granted in its favor on Mr. Desmond's claims for invasion of privacy, negligence, negligence per se, and his request for punitive damages because: (1) the FDCPA preempts Mr. Desmond's state law claims; (2) P&C's conduct was neither substantial nor highly offensive to a reasonable person as is required for an invasion of privacy claim under Pennsylvania law; and (3) Mr. Desmond has not set forth evidence from which a reasonable jury could find that punitive damages are warranted in this case. We will address each of P&C's arguments below.

A. Preemption

P&C contends that the FDCPA and the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA")[4] foreclose Mr. Desmond's state law claims for invasion of privacy, negligence, and negligence per se. Mr. Desmond counters that by its own terms and pursuant to relevant case law, the FDCPA does not preempt his state law claims.

Initially, we note that "there is a presumption against ... preemption." Hage v. Gen. Serv. Bureau, No. 01-367, 2002 WL 1796575, at *2 (D. Neb. 2002) (citation omitted). With respect to

---

[4] The FCEUA is Pennsylvania's analogue to the FDCPA. 73 Pa. Stat. Ann. § 2270.1, et seq. A debt collector's violation of the FDCPA automatically constitutes a violation of the FCEUA. 73 Pa. Stat. Ann. § 2270.4(a).

9

preemption pursuant to the FDCPA, "no court has ever held that the FDCPA completely preempts applicable state law or even that it preempts the field." Marshall v. Portfolio Recovery Assocs., Inc., 646 F. Supp. 2d 770, 775 n.4 (E.D. Pa. 2009) (quoting Virgil v. Reorganized M.W. Co., Inc., 156 F. Supp. 2d 624, 631 (S.D. Miss. 2001)); see also Silver v. Woolf, 538 F. Supp. 881, 888 (D. Conn. 1982) ("Congress has itself recognized the importance of the states' interest by explicitly providing that [the FDCPA] does not preempt the field and that the states" can regulate consistently with it).

By its own language, the FDCPA preempts only laws that afford consumers less protection than that provided by the FDCPA. Yang v. DTS Fin. Group, 570 F. Supp. 2d 1257, 1261 (S.D. Cal. 2008); Pirouzian v. SLM Corp., 396 F. Supp. 2d 1124, 1131 (S.D. Cal. 2005); Albright v. Allied Intern. Credit Corp., No. 03-4828, 2003 WL 22350928, at *2 (C.D. Cal. Aug. 25, 2003). Specifically, the FDCPA states that:

> This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

15 U.S.C. § 1692n.

Several courts have concluded that the FDCPA does not

preempt state law tort claims[5] for negligence and invasion of privacy. See, e.g., Heidelberger v. Am. Express Travel Related Serv. Co., Inc., No. 00141, 2007 WL 4404027, at *2-3 (E.D. Ark. Dec. 13, 2007) (negligence and outrage); Colorado Capital v. Owens, 227 F.R.D. 181, 191 (E.D.N.Y. 2005) (negligence); Virgil, 156 F. Supp. 2d at 631 (gross negligence); Williams v. Northcut & Edwards, P.C., et al., No. 396103, 1999 U.S. Dist. Lexis 12980, at *9-10 (S.D. Ohio July 7, 1999) (invasion of privacy).

P&C relies on Thrasher v. Cardholder Services, 74 F. Supp. 2d 691 (S.D. Miss. 1999), in support of its position that the FDCPA forecloses Mr. Desmond's state law claims. However, such reliance is misplaced because Thrasher was later overruled. Virgil, 156 F. Supp. 2d at 632 n.3.

Based upon the analysis set forth above, we find that Mr. Desmond's state law claims are not preempted by the FDCPA. Here, the state law claims provide greater protection, in the form of punitive damages and other tort relief, than the FDCPA provides. Such actions further the purpose of the FDCPA "... to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Mr. Desmond's state law

---

[5] Courts also have found that other state law tort claims are not preempted by the FDCPA. See, e.g., Yang, 570 F. Supp. 2d at 1261 (state law fair debt collection practices act); Pirouzian, 396 F. Supp. 2d at 1130-31 (same); Albright, 2003 WL 22350928, at *1-2 (intentional infliction of emotion distress); Hage, 2002 WL 1796575, at *2 (declining to preempt state law consumer protection act claim in FDCPA action).

claims further the same purpose as, and are consistent with, claims brought under the FDCPA. Accordingly, neither the FDCPA nor the FCEUA preempt these claims. Nor do they preempt Mr. Desmond's request for punitive damages.

B. <u>Invasion of Privacy Claim - Intrusion Upon Seclusion</u>

We next turn to the merits of Mr. Desmond's invasion of privacy claim. P&C contends that it is entitled to summary judgment on Mr. Desmond's state law claim for invasion of privacy in the form of intrusion upon seclusion because there is no evidence of record to support a jury finding that the one phone conversation P&C had with Mr. Desmond was "highly offensive to a reasonable person," and as such, P&C is entitled to judgment as a matter of law. To the contrary, Mr. Desmond contends that P&C intruded upon his seclusion by repeatedly contacting him via letter and phone for a debt he did not owe after he told P&C to leave him alone so he could grieve on his own terms.

To maintain a privacy claim for intrusion upon seclusion in Pennsylvania, Mr. Desmond must prove that: (1) there was an intentional intrusion; (2) upon his solitude or seclusion, or his private affairs or concerns; and (3) that the intrusion was substantial; and (4) highly offensive. <u>Tucker v. Merck & Co.</u>, 102 Fed. App'x 247, 256 (3d Cir. 2004).

Pennsylvania has adopted the definition for intrusion upon seclusion invasion of privacy as set forth by the Restatement

12

(Second) of Torts, § 652B:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy if the intrusion would be <u>highly offensive to a reasonable person</u>.

Larsen v. Philadelphia Newspapers, Inc., 543 A.2d 1181, 1186-87 (Pa. Super. Ct. 1988) (citation omitted) (emphasis added).

The Restatement explicitly provides that there is no liability for knocking at someone's door, or calling him to the telephone on one occasion, or even two or three, to demand payment of a debt. Rather, it is only when the telephone calls are repeated with such persistence and frequency that the behavior rises to the level of a substantial burden to one's existence such that his privacy is invaded. See Restatement (Second) of Torts § 652B cmt. d.

In this case, the evidence of record indicates that P&C called Mr. Desmond at least fourteen times, eight times during the nine-day period from February 20, 2008 through February 29, 2008, and six times from March 3, 2008 through May 19, 2008. The record shows that P&C sent four letters to the Desmond residence. Those letters were dated February 21, 2008, May 13, 2008, June 16, 2008, and July 3, 2008, and were addressed to "the Estate of Jill C. Desmond." The record indicates that P&C left at least one or two messages on Mr. Desmond's answering machine. In addition, a P&C account specialist, Ms. Lohr, spoke to Mr. Desmond on one occasion,

13

after Mr. Desmond sent a cease and desist letter to P&C. Moreover, P&C continued to send letters to the Desmond estate after Mr. Desmond indicated, via letter twice and once via phone, that he wanted to be left alone. Although Mr. Desmond has admitted that Ms. Lohr was polite to him on the phone, did not make any threats to him, and agreed with him that he did not have to pay the outstanding debt, whether P&C's intrusion into Mr. Desmond's privacy, taken as a whole, was substantial or highly offensive to a reasonable person is a question of fact for the jury to decide.

We note that absent from the record is any evidence that P&C threatened, yelled at, manipulated, coerced, or abused Mr. Desmond during the one phone conversation that took place. But, as explained above, Mr. Desmond's privacy claim involves more than his single phone conversation with P&C. It involves all the communications and attempted communications by P&C regarding the outstanding debt on his deceased wife's Chase credit card. Even though there is no evidence that P&C called Mr. Desmond during the early morning or late night hours, threatened him either with legal action or physical harm, or contacted his family or friends, viewing the totality of evidence in the light most favorable to Mr. Desmond, the non-moving party, we conclude that there exists a genuine dispute of material fact as to whether P&C's conduct toward Mr. Desmond was a substantial intrusion upon his solitude or seclusion and was highly offensive to a reasonable person.

Accordingly, we will deny summary judgment as to Mr. Desmond's invasion of privacy claim.

C. <u>Punitive Damages</u>

Turning to the merits of Mr. Desmond's request for punitive damages as to his state law claims[6] (counts II, III, and IV of the amended complaint), P&C argues that the court should strike Mr. Desmond's claim for punitive damages because the record lacks any evidence in support of such damages in this instance. Mr. Desmond counters that he has produced evidence in support of his punitive damages claim and whether that evidence is sufficient for an award of such damages is for the jury to decide.

In Pennsylvania, punitive damages may be awarded "when the plaintiff has established that the defendant has acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others." <u>Phillips v. Cricket Lighters</u>, 883 A.2d 439, 445 (Pa. 2005) (citation omitted). "A defendant acts recklessly when 'his conduct creates an unreasonable risk of ... harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent.'" <u>Hutchison v. Luddy</u>, 870 A.2d 766, 771 (Pa. 2005) (quoting Restatement (Second) of Torts § 500).

In support of his claim for punitive damages, plaintiff must "adduce evidence which goes beyond a showing of negligence,

---

[6] See <u>supra</u> note 1.

15

evidence sufficient to establish that the defendant's acts amounted to intentional, willful, wanton or reckless conduct." Phillips, 883 A.2d at 446 (quotations omitted). Here, whether the content, duration, quantity, or nature of the calls/letters/messages at issue rises to the level of being intentional, willful, wanton or reckless is a question for the jury. Therefore, we find that a reasonable jury could find that P&C's conduct towards Mr. Desmond was sufficiently outrageous so as to warrant an award of punitive damages for Mr. Desmond's state law claims.

V. CONCLUSION

Based on the foregoing, we will deny P&C's motions. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JIM DESMOND, )
)
    Plaintiff, )
)
v. ) Civil Action No. 09-0034
)
PHILLIPS & COHEN ASSOCIATES, LTD., )
)
    Defendant. )

ORDER

AND NOW, this 8th day of July, 2010, IT IS HEREBY ORDERED that defendant's motion to dismiss in the form of a partial motion for summary judgment and motion for partial summary judgment [Doc. Nos. 70 & 86] are DENIED.

BY THE COURT:

_____, C.J.

cc: All Counsel of Record